UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MERCURIA SHIPPING SARL, JAVELIN GLOBAL COMMODITIES (UK) LTD. and ULTRATECH CEMENT LIMITED,<br><br>Petitioners,<br><br>For Order Authorizing Discovery Pursuant to Federal Rule of Civil Procedure 27 | 1:25-cv—3207-MJM<br><br>**JOINT REPLY MEMORANDUM OF MERCURIA ENERGY TRADING, INC., JAVELIN GLOBAL COMMODITIES, AND ULTRATECH CEMENT LIMITED IN SUPPORT OF PETITION TO PRESERVE VESSEL-BASED EVIDENCE** |

Petitioners Mercuria Shipping SARL ("Mercuria"), Javelin Global Commodities (UK) Ltd. ("Javelin") and UltraTech Cement Limited ("UCL") (collectively "Petitioners") by their undersigned counsel, respectfully submit this Reply to the Opposition Memorandum of Law filed by Linville LP and W Marine Inc. ("Owners"). The crux of this petition is not coal sampling or cargo testing (which the Petition of Olam Maritime Freight Pte Ltd. ("Olam") already addresses), but preservation of evidence uniquely within the control of the M/V W SAPPHIRE ("the Vessel")—namely, vessel records (as itemized in Exhibit 1 (ECF No. 1-4)), depositions of key officers/crew, and physical inspections by qualified marine experts.

**I.   INTRODUCTION**

Absent immediate judicial intervention, the Vessel will discharge the coal cargo and undergo repairs, crew will be repatriated, and relevant physical evidence records and data will be overwritten — all of which risk irrevocably altering or destroying the factual underpinnings of anticipated admiralty claims. Petitioners respectfully submit that the grant of discovery under Rule 27 is well within this Court's discretion and that Owners' objections do not withstand scrutiny.

Owners begin their opposition by portraying Rule 27 as an "extraordinary remedy" limited to the "perpetuation" rather than the "production" of evidence. Opp. Br. at 1–2, ECF No. 15. That

characterization overstates the Rule's constraints, understates its purpose, and is flatly contradicted by the face of the Rule, which explicitly provides that "depositions may be taken." Fed. R. Civ. P. 27(a)(3). Rule 27 is exceptional only in timing, not in substance. It is a remedial mechanism designed to prevent the loss of physical evidence testimony and/or documents before litigation can responsibly be commenced. The Rule expressly authorizes courts to issue orders equivalent to those available under Rules 34 and 35—including inspection, copying, and preservation—where necessary to perpetuate evidence. Fed. R. Civ. P. 27(b). Indeed, as the Fourth Circuit recognized in *In re Deiulemar Compagnia di Navigazione v. M/V Allegra*, "[t]he perpetuation of testimony includes the inspection of documents and things." 198 F.3d 473, 478 n.5 (4th Cir. 1999). Such relief is not ordinary "discovery" but a pragmatic measure to ensure the preservation of critical evidence that "might otherwise be lost." *Id.* at 484.

## II.     RULE 27 AUTHORIZES PRESERVATION OF VESSEL EVIDENCE

### A. Legal Standard and Permissible Scope

The Fourth Circuit's guidance thus supports the use of Rule 27 in admiralty settings where vessel condition, records, and crew availability may change rapidly. Rule 27(a)(1) allows a verified petition where a party "expects to be a party to an action cognizable in a United States court but cannot presently bring it," and seeks to preserve testimony or evidence because it may otherwise be lost or unavailable. Fed. R. Civ. P. 27(a)(1). Once the predicate showing is made, Rule 27(b) empowers the court to issue orders "that a court may issue under Rule 34 and Rule 35"—that is, to order document production, inspections, physical evidence designation for retention and later laboratory examination and depositions—to preserve evidence. *See Deiulemar*, 198 F.3d at 484 (affirming inspection, document copying, and observation of repairs). In *Deiulemar*, the Fourth Circuit recognized a district court's authority to grant Rule 27 relief even

when the underlying dispute was subject to arbitration, because the preservation of evidence was necessary in the face of imminently changing conditions. *Id.* at 484. In addition, Rule 27 is properly invoked when, as here, testimony or documents may be lost or the relevant conditions altered over time. *See, e.g.*, *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975) ("Rule 27 … is available in special circumstances to preserve testimony which could otherwise be lost").

Owners spill much ink contending that the Petition must nevertheless fail because no "expected adverse party resides" in this District. *See* Opp. Br. at 8–10, ECF No. 15. That argument misreads the Rule. The "residence" language in Rule 27(a)(1) is a venue directive, not a jurisdictional limitation, and courts interpret it flexibly to permit the filing of petitions in the district where the evidence or witnesses to be preserved are located. *See Deiulemar*, 198 F.3d at 484; *see also De Wagenknecht v. Stinnes*, 250 F.2d 414, 417-18 (D.C. Cir. 1957) (where no expected adverse party may have been a resident of the district where the Rule 27 proceeding was filed, "proceedings for perpetuation should not fail for lack of a proper district, provided there are proper safeguards as to notice and service of process, or other method of bringing the proceeding to the attention of the nonresident aliens"). Here, the W SAPPHIRE —the subject of the casualty and the *in rem* defendant in any eventual proceeding—is presently within this District's territorial waters under U.S. Coast Guard detention. That presence constitutes "residence" for purposes of Rule 27(a)(1) in an admiralty context, where the Vessel itself is the juridical "person" against which claims lie. *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).[1]

In any event, Rule 27's purpose is to preserve evidence in danger of being lost, not to elevate venue formalities above justice. As the Fourth Circuit explained in *Deiulemar*, the Rule

---

[1] This case was superseded by statute on other grounds, as observed in *Ross v. Colorado Outward Bound School Inc.*, 822 F.2d 1524 (10th Cir. 1987),

[3]

should be applied "with flexibility consonant with its remedial purpose". *Id.* Because the Vessel, crew, and records are within this District, this Court is the logical and proper forum to ensure that the evidence is preserved before it leaves U.S. jurisdiction.

### B.   Petitioners Meet the Predicate Requirements

#### 1.  Cognizable U.S. Action (Now or in the Future)

Petitioners anticipate the filing of at least one claim against the Vessel, *in rem*, and against Owners, *in personam*, arising from the explosion aboard the W SAPPHIRE. Unlike the amorphous claim of questionable subject matter jurisdiction in *Qin v. Deslongchamps*, 539 F.Supp.3d 943 (E.D. Wis. 2021), such litigation arising from the explosion on board the Vessel while in waters within the boundaries of this District unquestionably would come within this Court's admiralty jurisdiction.  UltraTech, as bill-of-lading holder and cargo owner, retains independent maritime rights distinct from any charter party or arbitration clause contained therein. Even if claims among the various entities in the chain of vessel charter parties may be subject to arbitration, those arbitration agreements do not bind UltraTech's separate claims in the District of Maryland. Similarly, neither Mercuria nor Javelin has a charter party or other contract directly with Owners requiring arbitration.  At present, therefore, none of the chartering participants nor any of the respondents named in Olam's petition can be ruled out as a potential party.

#### 2.  Present Inability to Bring the Action

At present, Petitioners cannot meaningfully prosecute discovery of Vessel-controlled evidence because the Vessel remains under repair, crew remain on board (or may soon leave), and records are subject to alteration or loss. Most critically, Owners are refusing to provide the most basic information that typically is disclosed following maritime casualties and that might inform Petitioners' ultimate decisions of what claims might be asserted here.

Owners' reliance on *In re Skylight Shipping Corp.*, 1999 WL 1293472 (E.D. La. July 9, 1999), and *In re Liquor Salesmen's Union Local 2D Pension Fund*, 2012 WL 2952391 (E.D.N.Y. July 19, 2012), is misplaced. See Opp. Br. at 2–3, 6–8, ECF No. 15. Those cases involved petitioners who could have immediately brought suit but sought to use Rule 27 as a pre-suit discovery tool to explore new claims—an approach courts consistently reject. Rule 27 is not designed for such "fishing expeditions," but to preserve evidence that is in real danger of being lost before a case can properly be filed.

Federal courts have repeatedly granted Rule 27 petitions where petitioners were genuinely unable to bring suit but showed that perpetuating testimony or evidence was necessary to prevent a failure of justice and the risk of evidence being lost. *See Deiulemar Compagnia di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473 (4th Cir. 1999) (affirming preservation of evidence on a vessel about to leave U.S. waters); *In re Bay City Middlegrounds Landfill Site v. Kuhlman Elec. Corp.*, 171 F.3d 1044 (6th Cir. 1999) (preserving testimony material to environmental liability); *In re Sims*, 389 F.2d 148 (5th Cir. 1967) (petitioners who were barred from filing habeas actions until exhausting state remedies could perpetuate expert testimony); *Mosseller v. United States*, 158 F.2d 380 (2d Cir. 1946) (seaman's deteriorating health risked loss of critical testimony); *In re Alpha Indus.*, 159 F.R.D. 456 (S.D.N.Y. 1995) (petitioner unable to identify which distributor breached contract or engaged in counterfeiting). Together, these cases confirm that Rule 27 applies where a party reasonably expects to bring suit but cannot yet do so, and where evidence is at risk of loss.

That principle is especially compelling in admiralty cases. In *In re Compania Chilena de Navegacion Interoceanica S.A.*, 2004 U.S. Dist. LEXIS 6408 (E.D.N.Y. Jan. 29, 2004), the court authorized depositions of a vessel's crew following an engine-room fire because the ship was set to depart within twenty-four hours. The court held that the crew's imminent departure and likely

unavailability created "extraordinary circumstances" justifying Rule 27 relief, reasoning that when seafarers with firsthand knowledge are about to leave U.S. jurisdiction, preserving their testimony is essential "to prevent a failure or delay of justice." 2004 U.S. Dist. LEXIS 6408, at *10-11.

The same logic governs here. Petitioners cannot yet bring suit because the cause and scope of the explosion remain under investigation, and the respective responsibilities of the Vessel, charterers, and cargo interests have not been determined. Rule 27 was crafted for precisely this circumstance—where a prospective litigant "expects to be a party to an action … but cannot presently bring it." Fed. R. Civ. P. 27. Preservation orders are especially appropriate in maritime casualty cases, where critical physical and testimonial evidence may vanish once the cargo is discharged, the vessel is repaired or the crew repatriated. *Deiulemar*, 198 F.3d at 484.

Petitioners' inability to sue is not strategic. It arises from the ongoing investigation into the cause of the W SAPPHIRE explosion, the potential overlap of claims subject to London arbitration, and the need to determine the proper parties. Owners' refusal to cooperate in joint survey/s, disclose Vessel documents, or provide access to the cargo further impedes Petitioners' ability to confirm the technical facts and identify all responsible entities. As the Third Circuit recognized in *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975), the Rule's purpose is to prevent loss of evidence—not to confer tactical discovery advantages. Petitioners seek only to preserve specific, existing and also known evidence—the crew's testimony and the Vessel's physical condition—before it becomes unavailable, lost or destroyed. That request satisfies the objective standard under Rule 27 and falls squarely within the Fourth Circuit's guidance in *Deiulemar*, 198 F.3d at 484.

Owners also contend that Petitioners have "not described with any specificity" the claims they anticipate bringing, and that nothing prevents them from filing suit now or arresting the W SAPPHIRE under Supplemental Rule C. *See* Opp. Br. at 7–8, ECF No. 15. They argue that

[6]

Petitioners' potential claims are "illusory" and "will never be filed." *Id.* at 8.  This mischaracterizes both the Rule and the circumstances. Owners' claim that Petitioners could "simply file suit now" ignores that Owners control the very evidence necessary to frame such a complaint. Rule 27 exists for precisely this circumstance—where factual uncertainty, caused by the evidence-holder's own control, prevents a responsible filing. Rule 27 requires only that a petitioner *expects* to be a party to an action cognizable in a United States court but *cannot presently bring it.* Fed. R. Civ. P. 27(a)(1)(A). It does not require that every cause of action be fully pleaded or that a petitioner commence premature litigation before critical facts are identified through investigation.

UltraTech cannot responsibly initiate an *in rem* action under Supplemental Rule C at this stage because essential Vessel records and technical data—necessary to verify the maritime lien and establish the likely merits of a claim for cargo loss or damage—remain within the Owners' exclusive possession. Without those materials, UltraTech's ability to move forward in good faith to prepare the verified complaint that Rule C requires is necessarily compromised. Proceeding now would risk incomplete or inaccurate pleadings, duplicative litigation, and procedural fragmentation, not to mention potential counterclaims for wrongful vessel arrest.  A limited Rule 27 order will instead allow the parties to identify and preserve critical evidence so that any eventual claim may be responsibly and efficiently brought once the factual foundation is known.  Rule 27 exists to prevent precisely this kind of "failure or delay of justice." Fed. R. Civ. P. 27(a)(3); *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975). As both *Ash* and the Fourth Circuit's decision in *Deiulemar*, 198 F.3d at 484, make clear, the rule is not a discovery device but a limited mechanism to preserve evidence genuinely at risk of loss, due to the necessity to repair the Vessel to make it seaworthy before a claim can responsibly be filed—exactly the situation presented here.

### 3. Risk of Loss, Alteration, or Unavailability of Evidence

Petitioners have shown that the Vessel is scheduled for repairs, cargo discharge, and crew turnover. Given these developments, the damaged equipment and installations involved in the explosion will be removed and replaced or destroyed by handling, the factual record will degrade, memories will fade, and some logs or sensor data may be overwritten or lost. Such changes would be irreversible if preservation is not authorized now, as Petitioners' ability to reconstruct the factual basis of their claims would be permanently impaired. Courts have long held that Rule 27 is intended for precisely such situations where waiting would result in loss of essential proof. See *Ash v. Cort*, 512 F.2d at 912; *Deiulemar*, 198 F.3d at 484. Once these threshold elements are met, the Court may, and in equity should, authorize preservation in the form of record production, depositions, and a joint inspection.

### III.  VESSEL DOCUMENTS (EXHIBIT 1) MUST BE PRODUCED NOW

The documents set forth in Petitioners' Exhibit 1 are precisely those that courts routinely require to be preserved under Rule 27 in maritime settings. They include:

- Deck logs, engine logs, safety related logs;
- Gas detection and alarm logs;
- Voyage data recorder (VDR) and sensor inputs/outputs;
- Internal incident reports and inspections;
- Surveys, maintenance records, communications about the Vessel and explosion; and
- Efforts/correspondence with authorities (e.g., Coast Guard).

*See*, ECF No. 1-4. These are not speculative or open-ended demands but the contemporaneous operational records most directly relevant to determining the cause of the casualty. Because many of these records are routinely overwritten, purged, or altered during ongoing voyage operations, cargo discharge, or repair work, their immediate preservation and limited production are essential to prevent loss or degradation of critical evidence.

Rule 27(b) expressly authorizes orders "to permit discovery under Rules 34 and 35" where necessary to perpetuate testimony or evidence. The limited production of these discrete documents falls squarely within that authority. Petitioners do not seek general discovery but only the immediate preservation and copying of specific, identifiable records that exist now and may otherwise be lost before suit can responsibly be filed.  Indeed, as the Fourth Circuit made clear in *Deiulemar*, "[t]he perpetuation of testimony includes the inspection of documents and things." 198 F.3d at 478 n.5.  Accordingly, the Court affirmed the order allowing inspections, observation of repairs, and copying of shipboard documents. Vessel-based documentation itself may constitute the very evidence whose loss warrants Rule 27 relief. That substantive claims ultimately may proceed in arbitration is not a bar to Rule 27 discovery, particularly where extraordinary circumstances threaten the destruction of material proof. *Id.* at 484.

Owners spend additional time and effort misreading *Deiulemar* as limiting Rule 27 relief to evidence held in camera and unavailable to petitioners. *See* Opp. Br. at 10–13, ECF No. 15. That is not what *Deiulemar* holds. The Fourth Circuit's decision turned on the district court's discretion to determine the appropriate means of preservation —not on any categorical rule barring disclosure to the parties. 198 F.3d at 484–87. The court expressly affirmed that Rule 27 "authorizes the district court to issue orders equivalent to those available under Rules 34 and 35," including document inspection and copying. *Id.* at 484. The fact that the district court in *Deiulemar* chose to retain certain materials in camera merely reflected a case-specific management decision, within that court's discretion, but not a limitation on the court's authority to order direct preservation or limited production where appropriate.

Here, Petitioners seek preservation of discrete, identified materials—shipboard logs, VDR data, and contemporaneous reports—that are in imminent danger of loss or alteration. As

*Deiulemar* confirms, Rule 27 exists precisely to prevent that outcome: "Rule 27 allows a district court to preserve evidence that might otherwise be lost to the arbitral process." *Id.* at 484. The requested order ensures that this evidence is secured in its original state and, consistent with *Deiulemar*, available for use in whatever forum ultimately adjudicates the parties' rights.

As a practical and equitable matter, the requested document set is narrowly tailored to known, relevant categories and imposes minimal burden beyond what a diligent vessel owner should already maintain. Ordering their prompt preservation and production now will simply ensure that contemporaneous evidence—unique to this Vessel and within Owners' exclusive control—is secured for use in whatever fora ultimately adjudicates the parties' rights.

## IV.  DEPOSITIONS OF CREW AND OFFICERS ARE NECESSARY TO PRESERVE KNOWN TESTIMONY

The master, chief officer, chief engineer, and electrical/ventilation personnel possess direct, first-hand knowledge of specific operational facts surrounding the August 18 explosion aboard the W SAPPHIRE. Their expected testimony is known, not speculative, and narrowly confined to discrete, documented subjects: the Vessel's cargo-handling conditions, alarms and gas readings, cargo monitoring during loading and immediately preceding the explosion, the response actions taken, and the state of Hold No. 2 and adjacent areas and systems immediately afterward. These factual accounts are readily reflected in contemporaneous logbooks, Coast Guard reports, and Owners' internal documentation.  Petitioners do not seek to explore unknown or speculative subjects; they seek only to perpetuate factual accounts already verified by existing records.

These individuals are foreign seafarers whose employment contracts will soon terminate and whose presence in the United States will end once the W SAPPHIRE receives Coast Guard clearance to depart. Upon departure, they will almost certainly be beyond this Court's subpoena

[10]

power and therefore "unavailable," and their recollections of the incident will inevitably diminish with time and distance.

Rule 27 is designed precisely for this situation—to preserve *known testimony* from identified witnesses when the party cannot presently bring suit and the evidence may otherwise be lost. The Rule expressly provides that "the court may permit the petitioner to depose the named persons in order to perpetuate their testimony." Fed. R. Civ. P. 27(a)(3). As courts have recognized, Rule 27 "is not a substitute for discovery. It is available in special circumstances to preserve testimony which could otherwise be lost." *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975). Petitioners are not seeking to conduct merits discovery or to identify new evidence; rather, they seek to record, under oath and on notice, factual information already captured in contemporaneous records, ensuring its reliability and availability for later proceedings.

Owners themselves acknowledge that "certain members of the crew of the Vessel have certain knowledge of events prior to and at the time of the incident," underscoring the materiality of their testimony and the need to preserve it before repatriation makes them unavailable. That admission confirms the material and *known* nature of the testimony sought. By authorizing these limited depositions—under oath, on notice, and confined to the factual events surrounding the explosion—the Court will ensure that critical, known evidence is preserved for use in any subsequent proceeding, without opening the door to premature or burdensome discovery. Rule 27 exists to prevent precisely such a failure of justice. As the Fourth Circuit recognized in *Deiulemar*, 198 F.3d at 484, preservation orders are proper in maritime casualty cases where critical evidence may vanish with time, movement, or repair. While *Deiulemar* addressed inspection and document preservation rather than depositions, its rationale supports prompt preservation orders in admiralty where conditions and witness availability are at risk of rapid change.

**V.      VESSEL INSPECTION IS CRITICAL TO PRESERVE PHYSICAL EVIDENCE**

Physical inspection by marine experts is essential to document the Vessel's condition before temporary repairs discharge of cargo or commencement of any repairs or alterations. Petitioners seek inspection of:

- The Vessel's holds, including Hold No. 2 (site of the explosion) and the surrounding area and related equipment and systems;
- Flammable and other Gas-detection, cargo monitoring and ventilation systems;
- Electrical and cargo-handling installations; and
- The bridge, engine room, and other critical structural areas that are directly connected to and serve the deck and interconnected systems of the cargo holds.

Owners argue that Petitioners have "not met their burden" and have not shown that any evidence is at risk of loss, emphasizing that the Vessel remains detained in the Chesapeake Bay with all crew aboard and no repairs planned. Opp. Br. at 2–3, 6–8, ECF No. 15. That portrayal overlooks the practical risk that physical conditions aboard the Vessel—e.g., configuration of ventilation systems, electrical circuits, and burn patterns—will inevitably change once temporary repairs/system isolation/de-energizing at anchorage are completed the cargo is discharged, cleaning begins, and, most critically, repairs commence. Corrosion, residue removal, rough handling of fragile damages systems/equipment and re-wiring and equipment replacement will irreversibly alter or destroy the evidence necessary to determine causation.

Rule 27 expressly authorizes preservation of such evidence to prevent a "failure or delay of justice." Fed. R. Civ. P. 27(a)(3), (b). In *Deiulemar*, 198 F.3d at 484, the district court's order permitted inspection and observation of repairs, and the Fourth Circuit upheld that relief as within Rule 27's scope. That decision confirms the propriety of vessel inspections in a maritime context where physical evidence is subject to alteration, deterioration, weathering and other degradation.

Joint, coordinated inspections are also the norm in the maritime industry. As Schoenbaum explains, following marine casualties, it is customary for the parties and their insurers to appoint

surveyors and to conduct joint surveys of the vessel and cargo damage under the supervision of attending authorities. *See* Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 14:15 (6th ed. 2023). The Declaration of Stijn Vodde confirms that petitioners have been denied the opportunity to participate in the type of meaningful joint surveys that typically follow marine casualties such as this. (Vodde Decl. ¶ 7, **Exhibit A**.) Such cooperative inspections promote transparency, avoid duplication, and ensure that all materially interested parties can rely on the same contemporaneous factual record. Here, because Owners have refused to abide by industry norms, Petitioners seek only to formalize through a Rule 27 order what is ordinarily accomplished by mutual consent when a maritime casualty occurs, for example giving all parties equal opportunity to jointly inspect the in-situ evidence and in most instances agree on a plan to preserve fragile evidence and/or methods to preserve same. Owners' refusal to permit joint inspections departs from well-established maritime practice and makes judicial intervention necessary to prevent the loss of critical physical evidence. *Deiulemar*, 198 F.3d at 485 (finding owner's refusal to provide charterer copies of ships documents and access to vessel before engine repairs were made – on its face – could be described as a dilatory tactic).

Petitioners therefore request court-approved inspections—conducted in coordination with the Coast Guard and Owners—to document the Vessel's current state before alterations occur. Such inspection will preserve objective, contemporaneous evidence without granting any party a discovery advantage. Absent inspection now, Petitioners would forever lose the opportunity to record the Vessel's unaltered condition, resulting in precisely the "failure or delay of justice" that Rule 27 is designed to prevent.

## VI.     OWNERS' OBJECTIONS SHOULD BE OVERRULED

### A.     Arbitration Among Charterers Does Not Defeat Preservation

Owners argue that because the potential charter party disputes among Olam, Mercuria, and Javelin are subject to London arbitration, Rule 27 relief should be denied for all parties. That line of attack fails for several reasons. First, Owners' repeated invocation of "London arbitration" is a red herring. None of the Petitioners—Mercuria, Javelin, or UltraTech—is a party to any arbitration agreement with Linville or W Marine. The arbitration provisions cited in the Opposition govern only disputes among the various charterers (e.g., Olam, Mercuria, Javelin) and do not extend to claims against the vessel owners. Consequently, there is no arbitral forum between these parties whose procedures could be "circumvented." Petitioners are not seeking to obtain an unfair advantage in any pending arbitration; they seek to prevent the loss of factual evidence uniquely within the Owners' control. The Owners' reliance on *Deiulemar Compagnia di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473 (4th Cir. 1999), actually underscores that Rule 27 relief is appropriate even where arbitration exists—let alone where, as here, there is none.

Second, UltraTech (and similarly Javelin in relation to the cargo) is not a party to the charter party arbitration clauses; its rights derive from bills of lading and U.S. maritime law. Arbitration provisions among charterers cannot restrict UltraTech's independent access to U.S. courts or its ability to preserve vessel evidence. Second, Rule 27 is not an adjudication on liability or contractual claims; it is a preventive tool to preserve evidence. Courts, including in *Deiulemar*, have allowed Rule 27 discovery even when the underlying dispute is arbitrable. *Deiulemar*, 198 F.3d at 484. And third, even where arbitration is in play, when the evidence is changing or at risk of loss, courts have found it equitable to permit Rule 27 preservation. *Id.* at 484 (the court held that "extraordinary circumstances" justified Rule 27 relief). Therefore, Owners' invocation of

[14]

arbitration cannot justify refusal to permit preservation of its own vessel records and the testimonies of its own crew.

### B.  The Requests Are Narrow, Targeted, and Non-Burdening

Petitioners do not request broad, exploratory discovery. The scope is strictly limited to:

- The categories of vessel records in Exhibit 1;
- Depositions of no more than the officers/crew with particularized, relevant testimony concerning the loading of the cargo, the preparations for the sea voyage, ventilation and the explosion; and
- Coordinated joint vessel inspections by marine experts.

Linville remains free to propose reasonable scheduling, safety measures, and protocols, but it cannot justify wholesale denial by claiming undue burden when it itself retains the underlying documents, vessel, and crew.

## VII.  REQUESTED RELIEF

Petitioners Mercuria, Javelin, and UltraTech respectfully request the Court to grant their petition and issue an Order:

1. Requiring Linville LP and W Marine Inc. to produce the records enumerated in Exhibit 1;
2. Authorizing limited preservation depositions of the Master, chief officer, chief engineer, and electrical/ventilation personnel directly concerning relevant events during loading, before, during, and after the explosion;
3. Permitting Petitioners' qualified marine experts to inspect and photograph the Vessel's relevant areas under reasonable coordination with Linville; and
4. Granting such further and additional relief as may be just, necessary, or proper to prevent a failure or delay of justice.

Dated: October 16, 2025

>Respectfully submitted,
>
>*The Petitioner*
>MERCURIA SHIPPPING SARL
>
>By:     */s/ James R. Jeffcoat*
>James R. Jeffcoat, Esq.
>Bar No. 30105
>WHITEFORD
>7 Saint Paul Street, Suite 1500
>Baltimore, MD 21202-1636
>(410) 347-8736
>jjeffcoat@whitefordlaw.com
>
>and
>
>Patrick F. Lennon, Esq.
>Kevin J. Lennon, Esq.
>LENNON, MURPHY & PHILLIPS, LLC
>The GrayBar Building
>420 Lexington Ave., Suite 300
>New York, NY 10170
>(212) 490-6050
>pfl@lmplaw.net
>kjl@lmplaw.net
>
>*The Petitioner*
>JAVELIN GLOBAL COMMODOTIES
>(UK) LTD.
>
>By:     */s/ Alexander M. Giles*
>Alexander M. Giles, Esq.
>Bar No. 24474
>TYDINGS & ROSENBERG, LLP
>One E Pratt Street
>Baltimore, MD 21202
>(410) 752-9747
>agiles@tydings.com

*The Petitioner*
ULTRATRECH CEMENT LIMITED

By:     */s/ Terry L. Goddard*
    Terry L. Goddard, Esq.
    Bar No. 15460
    SKEEN & KAUFFMAN, LLP
    9256 Bendix Road, Suite 102
    Columbia, MD 21045
    (410) 625-2272
    tgoddard@skaufflaw.com

    and

    John J. Sullivan, Esq.
    HILL RIVKINS LLP
    45 Broadway, Suite 2110
    New York, NY 10006
    (212) 669-0600
    jsullivan@hillrivkins.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that this 16th day of October, 2025 a true and correct copy of the foregoing Joint Reply Memorandum of Law of Mercuria Shipping Sarl, Javelin Global Commodities (UK) Ltd. and UltraTech Cement Limited in further support of their Petition for an Order to reserve Testimony and Evidence Pursuant to Fed. R. Civ. P. 27 was served via ECF upon all counsel of record.

By: */s/ James R. Jeffcoat*
James R. Jeffcoat

4900-1756-8371, v. 1